UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **MIAOMIAO PAN, and**<br>**YOUQING WANG** | § | |
| | § | |
| | § | |
| *Plaintiff*, | § | CASE NO. 4:26-cv-2254 |
| | § | |
| **v.** | § | |
| | § | |
| **American Citigroup Property** | § | |
| **Management, Inc.; AC Prosperity, LP;** | § | |
| **American Citihome Group Inc; USLiving** | § | |
| **Regional Center, LLC; American** | § | |
| **Citigroup Construction, Inc.; American** | § | |
| **Citigroup Real Estate Inc.; ACRC** | § | |
| **Property Management, L.L.C.; Golden** | § | |
| **Donau Prosperity LLC; Venetian** | § | |
| **Prosperity, LLC; Yue Yin, Individually;** | § | |
| **and Weijia Xu, Individually,** | | |

## VERIFIED ORIGINAL COMPLAINT

NOW COME, MIAOMIAO PAN ("Plaintiff" or "Pan") and YOUQING WANG ("Plaintiff" or "Wang"), and files this Original Complaint as against American Citigroup Property Management, Inc., AC Prosperity, LP, American Citihome Group Inc, USLiving Regional Center, LLC, American Citigroup Construction, Inc., American Citigroup Real Estate Inc., ACRC Property Management, L.L.C., Golden Donau Prosperity LLC, Venetian Prosperity, LLC, Yue Yin, and Weijia Xu (collectively, "Defendants"), and would for cause of action respectfully show unto the Court the following:

### PARTIES AND SERVICE OF PROCESS

1.      Plaintiff, Miaomiao Pan, and Plaintiff, Youqing Wang, are both citizens and residents of the People's Republic of China.

2.      Defendant, American Citigroup Property Management Inc. ("AC Management"), is a corporation organized under the laws of the State of Texas and is located at 6200 Savoy Drive,

1

Suite 1202, Houston, Texas 77036. AC Management may be served with process through its Registered Agent, Ingeborg Halecker, at 6200 Savoy Drive, Suite 1202, Houston, Texas 77036, or wherever he may be found.

3. Defendant, AC Property, LP. ("AC LP"), is a limited partnership organized under the laws of the State of Texas and is located at 6200 Savoy Drive, Suite 1202, Houston, Texas 77036. AC LP may be served with process through its Registered Agent, NIEY-BOR HSYUNG, at 7001 Corporate Drive, Suite 109, Houston, Texas 77036, or wherever he may be found.

4. Defendant, USLiving Regional Center, LLC ("USLiving"), is a limited liability company organized under the laws of the State of Texas and is located at 100 N Central Expy Ste 514 Richardson, Texas 75080.  USLiving may be served with process through its Registered Agent, Tuan A. Tran, at 100 N Central Expy Ste 514 Richardson, Texas 75080, or wherever he may be found.

5. Defendant American Citigroup Construction Inc. ("AC Construction"), is a corporation organized under the laws of the State of Texas. AC Construction may be served with process through its Registered Agent, Yue Yin, at 5204 Cascade Drive, College Station, Texas 77845, or wherever he may be found.

6. Defendant American Citihome Group Inc. ("AC Citihome"), is a corporation organized under the laws of the State of Florida and is located at 6200 Savoy Drive, Suite 1202, Houston, Texas 77036. AC Real Estate may be served with process through its Registered Agent, Ingeborg Halecker, at 6200 Savoy Drive, Suite 1202, Houston, Texas 77036, or wherever he may be found.

7. Defendant American Citigroup Real Estate Inc. ("AC Real Estate"), is a corporation organized under the laws of the State of Florida and is located at 6200 Savoy Drive, Suite 1202,

Houston, Texas 77036. AC Real Estate may be served with process through its Registered Agent, Ingeborg Halecker, at 6200 Savoy Drive, Suite 1202, Houston, Texas 77036, or wherever he may be found.

8.      Defendant Golden Donau Prosperity, LLC ("Golden Donau"), is a domestic limited liability company organized under the laws of the State of Texas and with its mailing address at P.O. Box 16174, Sugar Land, Texas 77496. Golden Donau may be served with process through its Registered Agent, Laterrian D. Thomas, at 6200 Savoy Drive, Suite 950, Houston, Texas 77036, or wherever he may be found.

9.      Defendant ACRC Property Management L.L.C. ("ACRC"), is a domestic limited liability company organized under the laws of the State of Texas and with its mailing address at P.O. Box 16174, Sugar Land, Texas 77496. ACRC may be served with process through its Registered Agent, Ingeborg Halecker, at 6200 Savoy Drive, Suite 1202, Houston, Texas 77036, or wherever he may be found..

10.      Defendant Venetian Prosperity LLC ("Venetian"), is a domestic limited liability company organized under the laws of the State of Texas and with its mailing address at P.O. Box 16174, Sugar Land, Texas 77496. ACRC may be served with process through its Registered Agent, Ingeborg Halecker, at 6200 Savoy Drive, Suite 1202, Houston, Texas 77036, or wherever he may be found.

11.      Defendant Yue Yin, aka Bill Yin ("Yin"), is the owner of AC Management, AC Construction, AC Citihome, Venetian, AC Real Estate, Golden Donau, and ACRC (the "AC Entities"). He operates the business of AC Entities at 6200 Savoy Drive, Suite 1202, Houston, Texas 77036, and may be served with process at that location or wherever he may be found.

12.      Defendant Weijia Xu, aka Jennifer Xu ("Xu"), is the co-owner of the AC Entities.

3

She operates the business of AC Entities at 6200 Savoy Drive, Suite 1202, Houston, Texas 77036, and may be served with process at that location or wherever she may be found.

## JURISDICTION AND VENUE

13.    This Honorable Court has diversity jurisdiction under 28 U.S.C. § 1332 because no defendant is a citizen of the same State as Plaintiff, and the amount in controversy is more than $75,000.00, not counting interest and costs of court. Jurisdiction is also proper because some or all of the conduct made the basis of this suit took place in Harris County, Texas, and the actions of Defendants leading to Plaintiff's damages took place, in part, in Harris County, Texas. Specifically, this Court has jurisdiction over Defendants AC Entities because their principal place of business is located in Harris County, Texas.

14.    Jurisdiction is also proper in federal court pursuant to 28 U.S.C. 1331 because this action involves questions of federal law, namely, whether the Defendants violated the Securities Exchange Act of 1934, 15 U.S.C. 77q(a) et seq.

15.    Venue is proper in this district pursuant to 28 U.S.C. 1391(b)(1) and (2) because corporate Defendants are Texas companies, and a substantial part of the events or omissions giving rise to the claim occurred in this district.

16.    The Defendants have all purposely availed themselves of this district by setting up the Project (as defined hereinafter) in this district. Further, on information and belief, tortious and illegal acts were committed by each of the Defendants in Harris County, Texas; they made false statements and misrepresentations to Plaintiff while at their offices in this district to induce the transfer of monies rightfully belonging to the Plaintiff. The ultimate effect of these schemes was to drain monies from the Plaintiff, who has suffered over half a million dollars in losses.

## FACTUAL BACKGROUND

17.    This lawsuit arises out of Yin and Xu's scheme to misuse the EB-5 Immigrant Investor Program to defraud Pan out of $555,500.00 of her money and to enrich only themselves and shell companies they own. Yin and Xu exploited Wang and Pan's desire to achieve the American Dream by making a number of misrepresentations through a series of carefully planned marketing and advertising campaigns. The laws of the United States and the State of Texas abhor such conduct.

18.    Key facts are established through Exhibit A, the Declaration of Youqing Wang, the Plaintiff. *See Ex. A.*

### The EB-5 Immigrant Investor Program

19.    The United States Citizenship and Immigration Services ("USCIS") administers the EB-5 Immigrant Investor Program, a program that was created by Congress in 1992 to stimulate the U.S. economy through job creation and capital investment by foreign investors. The program sets aside EB-5 immigrant visas for participants who invest in commercial enterprises approved by UCSIS, sometimes administered by entitles called "regional centers."

20.    The investment vehicles offered by regional centers to EB-5 foreign investors are typically offered as limited partnership interests or limited liability company units, which are managed by a person or entity other than the foreign investor, i.e., the general partner or managing member of the investment vehicle.

21.    To be eligible for an EB-5 visa through a regional center, a foreign investor must typically invest $1,800,000. However, for investments located in Targeted Employment Areas ("TEA"), a qualified investment is reduced to $500,000. The investor may then petition USCIS for conditional permanent residency for a two-year period through an application called an I-526 petition ("Immigration Petition"). To remove such condition on the permanent residency, the

investor must, in short, demonstrate (a) sustainment of investment, meaning that the required investment capital was made and maintained in the new commercial enterprise and were not subsequently withdrawn or repaid within prescribed period; and (b) sufficient job creation, meaning that at least ten U.S. jobs are created as a result of the foreign investor's investment, besides other procedural and substantive requirements regarding quality of the job created by the investment.

22.    The fact that a business is designated as a "regional center" by USCIS does not mean that USCIS, the U.S. Securities and Exchange Commission (the "SEC" or "Commission"), or any other government agency has approved the investments offered by the business, or has otherwise expressed a view on the quality of the investment. To the contrary, the USCIS and the SEC recognize that the EB-5 program may be misused to carry out fraudulent securities offerings. Hallmarks of EB-5 fraud include **promises of a visa or becoming a lawful permanent resident** and **guaranteed investment returns or no investment risk.**

23.    Through fraudulent paperwork, fantasy promotional materials, a shady property management company, and a complex corporate structure, predatory Defendants reaped Plaintiffs, foreign nationals, because they had passion and faith in pursuit of the American Dream with their life savings that their family had been saving over decades. Pan and Wang seek return of the money wrongfully induced by Defendants.

*Defendants' EB-5 Scheme – A Big Promise and a Bigger Lie*

24.    On October 27, 2014, Southern Opportunity Regional Center, LLC (the "Regional Center") received its regional center designation by USCIS for investments in various counties in Louisiana and Texas. One of the purported EB-5 investment vehicles offered by the Regional Center was AC LP, a commercial enterprise.

6

25.     ACRC was formed on September 9, 2015, in the State of Texas, with its registered address in the City of Houston. Defendants Yin and Xu held ninety-nine percent (99%) of the ownership interest at the time of its formation, and served as ACRC's managing members.

26.     ACRC was to include up to 13 foreign investors who purportedly would have access to benefits provided by the Texas Limited Liability Company statutes, including membership and voting rights, appointing managing members, and advising managing members in connection with policy decisions.

27.     ACRC was reportedly created to collect up to $6,500,000.00 of capital commitments of preferred equity financing for Venetian Prosperity LLC ("Venetian"), a Texas limited liability company, to construct, develop, sell, and manage single-family residential homes in a planned development located within a TEA in Houston, Texas (the "Project"). Development services were to be farmed out to AC Construction, to whom Venetian would pay a "development fee." Property management services were to be farmed out to AC Management, to whom Venetian would pay a "property management fee." Defendants Yin and Xu are shareholders and executive officers of both AC Construction and AC Management, and they also own Venetian.

28.     Following formation of ACRC, AC LP was formed on September 25, 2015, in the State of Texas, with its registered address in the City of Houston. On information and belief, Defendants Yin and Xu held ninety-nine percent (99%) of the ownership interest at the time of its formation, and retained exclusive control over AC LP. ACRC acted as the general partner of AC LP.

29.     AC LP was to include up to 120 foreign investors who purportedly would have access to benefits, including membership and voting rights, appointing managing members, and advising managing members in connection with policy decisions.

30.    AC LP was reportedly created to collect up to $60,000,000.00 of capital commitments of preferred equity financing for Defendant AC Real Estate, which is owned, controlled and managed by Defendants Yin and Xu, allegedly for construction, development, sale, and management of single-family residential homes in a planned development located within a TEA in Houston, Texas (the "Project"). On information and belief, (a) development services were then to be farmed out to AC Construction, to whom AC Real Estate would pay a development fee; (b) property management services were to be farmed out to AC Management, to whom AC Real Estate would pay a property management fee. Defendants Yin and Xu are shareholders and executive officers of both AC Construction and AC Management, and they also own AC Real Estate.

31.    Following the formation of AC LP and ACRC in late 2015, Yin and Xu commenced marketing events and activities advertising the Project to foreign investors, such as Plaintiffs, as a "risk-free" EB-5 investment opportunity for acquiring (a) permanent residency in the U.S. and (b) title to a single-family home within the Project site.

32.    In early 2016, Yin and Xu, by themselves and through their marketing agents, marketed and introduced to Plaintiffs the Project and advertised it as an investment involving the construction, development, sale, and management of single-family residential homes in a master-planned community in Houston, Texas (the "Project").

33.    The Project was advertised to Plaintiffs as an investment opportunity under the EB-5 Immigrant Investor Program (the "EB-5 Program") administered through the USCIS. It was represented to Plaintiffs that if they invested $500,000 in a new residential property within the Project community to be constructed by entities affiliated with the Project, they would gain an official U.S. green card and become the owner of the residential properties to be constructed (the

"Property"). Plaintiffs were specifically promised and assured by Xu and Yin that the investment was "risk-free" because it would be secured by the Property, and was also asked to pay $50,000 in administrative fees to process his application.

34.     To induce payment from Plaintiffs in support of Yin and Xu's assertion that the Property would serve as security for Plaintiffs' investment, Plaintiffs were provided documents that Xu and Yin, through their marketing agents, assured me were legitimate, including a Purchase and Sale Agreement for the Property ("Home Purchase Agreement"). *See Ex. B.* As a consequence, Chen was misled to believe that his funds were secured by the Property as collateral, and was further told that all he had to do after making the $500,000 investment was designate a "trusted person" to receive the Property.

35.     Trusting in these representations and instructions from people who claimed to have expertise in this area, Plaintiffs transferred a total of $550,000 to invest in the Project in March 2016 and had the Home Purchase Agreement signed on November 6, 2016. *See Ex. C.*

36.     At all times prior to Plaintiffs' investment, Xu and Yin, through their marketing agents, led Plaintiffs to believe that such structure was in full compliance with the EB-5 Program. Plaintiffs were never advised that the EB-5 Program requires that their investment be placed as capital at-risk. Unbeknownst to Plaintiffs at the time, this investment structure did not comply with EB-5 Program rules. But for the representations that the investment was fully secured and of no risk, Plaintiffs would not have invested in the Project.

37.     Over the next couple of years, Plaintiffs acted under the false light cast by the timeline and vague updates received from the Defendants, indicating that the Project, their immigration application were both underway and the Property was being constructed. However, in the beginning of 2025, the Plaintiffs learned that their immigration application were rejected.

Immediately thereafter, Plaintiffs contacted Defendants, none of which responded to Plaintiffs inquiries and the Property remained undelivered. This lawsuit follows.

**FIRST CLAIM FOR RELIEF**
**(15 U.S.C. 78j (17 CFR. 240.10b-5) and 78t Federal Securities Exchange Act Violation)**

38.    Plaintiffs re-allege and reiterate the foregoing paragraphs as if set forth fully herein.

39.    Section 10b of the Securities Exchange Act provides that it shall be unlawful for any person, directly or indirectly, to use any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe for the protection of investors. *See* 15 U.S.C. 78j.

40.    In furtherance of Rule 10(b), the Commission enacted Rule 10b-5 which makes clear that it is unlawful to (a) employ any device, scheme, or artifice to defraud, (b) to make any untrue statement of material fact, or (c) to engage in any act, practice or course of business which operates as a fraud or deceit on any person, in connection with the purchase and sale of a security. 17 C.F.R 240.10b-5.

41.    A "material fact" under Rule 10b-5 is any fact that a reasonable investor would find important in making a decision whether to invest.

42.    Defendants Yin and Xu, as the managers, directors, and owners of Defendants AC Entities structuring the deal, designed and carried out a series of marketing and advertising events and materials to be drafted and disseminated to the Plaintiffs, and caused such marketing and advertising materials, the purchase and sale agreement, and the EB-5 application packet (the "Investment Documents") to be issued to the Plaintiff, for the sale of securities of AC LP.

43.    These Investment Documents worked a fraud and deceit on the Plaintiffs because Plaintiffs signed in reliance on material misrepresentations made by Defendants. In addition, Defendants violated the Investment Documents since Plaintiffs' money was intentionally drained

10

by Defendants and their affiliates in violation of the Investment Documents.

44.    This is a material misrepresentation, and the Plaintiffs relied upon the Investment Documents in making their investment.

45.    The promises made in the Investment Documents were untrue and made with the intent to induce reliance by the Plaintiffs, causing specific and quantifiable harm to the Plaintiffs, and the Defendants are jointly and severally liable for damages caused.

46.    The Defendants also acted with scienter, in full knowledge of the falsity of the representations they made to the Plaintiffs.

## SECOND CLAIM FOR RELIEF
### (Fraud – All Defendants)

47.    Plaintiffs re-allege and reiterates the foregoing paragraphs as if set forth fully herein.

48.    Defendants marketed and advertised the Project by falsely guaranteeing the risk-free nature of the investment made by Plaintiffs to the Project, and claiming a no-risk investment was permissible under the EB-5 program when it was not. Such statement contains the material misstatement that the Project is 100% risk free, which is impossible for any investment, and which would disqualify the Project for EB-5 program, which requires that investors place capital at risk.

49.    Plaintiffs relied on such misstatement, and such reliance caused him damage.

50.    Defendants' intentional failure to inform Plaintiffs of the truth was a ploy to drain their money.

51.    Defendants are jointly and severally liable for this fraud on Plaintiffs.

## THIRD CLAIM FOR RELIEF
### (Fraudulent Inducement, and Fraudulent Misrepresentation – All Defendants)

52.    Plaintiffs re-alleges and reiterates the foregoing paragraphs as if set forth fully

11

herein.

53.     Defendants made material misrepresentations of material facts in order to induce Plaintiffs to invest into AC LP *supra* to their detriment. Should Plaintiffs have been informed that the investment they made to the AC Entities cannot be risk-free in order to qualify them as an EB-5 investor, no such investment would have been made by Plaintiffs.

54.     At all times relevant, all Defendants made these material representations with knowledge of their falsity and knew or should have known that Plaintiffsrelied on these material representations to his detriment. As a direct and proximate result of Defendant's misrepresentation and Plaintiffs' reasonable reliance thereon, Plaintiffs suffered economic losses, lost business opportunity, attorney's fees, interest, and other damages. Chen claims a refund of $555,500 as actual damages, and further for exemplary damages.

## FOURTH CLAIM FOR RELIEF
### (Conversion – All Defendants)

55.     Plaintiffs re-alleges and reiterates the foregoing paragraphs as if set forth fully herein.

56.     The elements of a cause of action for conversion are the following: (1) the plaintiffs owned, possessed, or had the right to immediate possession of the property; (2) the property was personal property; (3) the defendant wrongfully exercised dominion or control over the property; and (4) the plaintiff suffered injury. *Green Int'l v. Solis,* 951 S.W.2d 384, 391 (Tex. 1997).

57.     Defendants Yue Yin and Weijia Xu's rights owner, manager, and officer of AC LP included the right to possess Plaintiff's investment, as well as AC LP's corporate books, records, and assets. Defendants Yue Yin and Weijia Xu have converted Plaintiffs' property, including the monetary investment, for their own purposes. They did so wrongfully, and Plaintiffs have suffered actual damages as a result and is entitled to recovery of the property converted, recovery of direct

12

and consequential damages, and recovery of exemplary damages.

## FIFTH CLAIM FOR RELIEF
### (Civil Conspiracy – All Defendants)

58.    Plaintiffs re-allege and reiterates the foregoing paragraphs as if set forth fully herein.

59.    The elements of a cause of action for civil conspiracy are the following: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or couse of action; (4) one or more unlawful, overt acts; and (5) the plaintiff suffered damages as a proximate result of the wrongful act. *Chon Thi v. J.T.T.,* 162 S.W.3d 552, 556 (Tex. 2005). Further, two or more businesses can conspire with each other.  *Remenchik v. Whittington,* 757 S.W.2d 836, 840-41 (Tex. App.—Houston [14th Dist.] 1988, no writ.).

60.    Defendants Yue Yin and Weijia Xu each had knowledge or should have known the falsity of the representations made to Plaintiffs and approved such misrepresentations and conversion of fund for the benefit of themselves and the remaining Defendants. The conspiracy between Defendants is wrongful. Plaintiffs have suffered actual damages as a result and is entitled to recovery of the property converted, recovery of his direct and consequential damages, and recovery of exemplary damages.

## SIXTH CLAIM FOR RELIEF
### (Aiding and Abetting Fraud and Fraudulent Inducement – All Defendants)

61.     Plaintiffs re-allege and reiterate the foregoing paragraphs as if set forth fully herein.

62.    All Defendants had knowledge of the fraudulent scheme on the part of the AC Entities to do one or all of the following: (1) misrepresent of the nature of the Eb-5 investment AC LP is seeking from Plaintiffs; and (2) design and execute of the fraudulent scheme involving the

use of the purchase and sale agreement and the Property to induce payment from Plaintiffs. Defendants had knowledge that the others' conduct constituted a tort. As described above and herein, each of the Defendants aided, abetted, assisted and/or encouraged in completing these fraudulent transactions and activities, with the intent and understanding that the activities were fraudulent, or with reckless disregard, and such conduct was a substantial factor in causing the underlying torts.

63.    The Defendants designed the fraudulent scheme, organized and customized the corporate structure for compliance with the EB-5 program, participated in the advertising and marketing campaigns that aimed to attract investment from EB-5 investors like Plaintiffs through misrepresentation of the at-risk nature of such investment, and received and converted such investment made by EB-5 investors, including Plaintiffs. Therefore, the Defendants had knowledge that their own conduct constituted a tort and intended to further such tort, as Defendants benefited from the wrongdoing.

64.    Each of these Defendants' own conduct, separate and apart from that of the primary actor itself, was a fraud on Plaintiffs. Further, the Defendants intentionally assisted and encouraged the fraudulent acts of Defendants Yue Yin and Weijia Xu in a large scheme. The end result included investment funds fraudulently induced from Plaintiffs, and Plaintiffs' stake in the Immigration Petition was fatally harmed.

**SEVENTH CLAIM FOR RELIEF**
**(In the Alternative, Breach of Contract – AC Real Estate)**

65.    Plaintiffs re-allege and reiterate the foregoing paragraphs as if set forth fully herein.

66.    The elements of a breach of contract action are:  1) the existence of a valid contract; 2) performance or tendered performance by the plaintiff; 3) breach of the contract by the defendant; and 4) damages sustained by the plaintiff as a result of the breach.  *Valero Mktg. & Supply Co. v.*

14

*Kalama Int'l L.L.C.,* 51 S.W.3d, 345, 351 (Tex. App.—Houston [1st Dist] 2001, no pet.); see also *Wright v. Christian & Smith*, 950 S.W.2d 411,412 (Tex. App.—Houston [1st Dist.] 1997, no writ).

67.     The purchase and sale agreement is a valid contract between Plaintiffs and AC Real Estate for the sale and purchase of a certain residential home. Plaintiffs performed under the purchase and sale agreement by paying $550,000 to AC Real Estate. AC Real Estate breached the purchase and sale agreement by accepting the money but failing to deliver under the purchase and sale agreement.

68.     AC Real Estate's breach has damaged Plaintiff in an amount exceeding **$550,000**, together with expectancy, reliance, and restitution damages, as well as Plaintiffs' reasonable and necessary attorney's fees and costs.

69.     On information and belief, AC Real Estate is the alter ego of Yue Yin and Weijia Xu, as they used AC Real Estate for the purpose of perpetrating an actual fraud against Plaintiff primarily for the benefit of themselves and the remaining Defendants. Therefore, piercing the corporate veil applies, and Yue Yin, Weijia Xu, and AC Real Estates are all, jointly and severally, liable.

**EIGHTH CLAIM FOR RELIEF**
**(In the Alternative, Money Had and Received – All Defendants)**

70.     Plaintiffs re-allege and reiterate the foregoing paragraphs as if set forth fully herein.

71.     Defendants promised to deliver the Property to Plaintiffs in exchange for the $550,000.00 transferred by the Plaintiffs to Defendants. Plaintiffs reasonably relied on Defendants' promises and wired the $550,000 to Defendants, which the Defendants accepted. It was foreseeable that Plaintiffs would expect to receive the Property after they promised to deliver the Property. The money Defendants received for the Property belongs to Plaintiffs in equity and good conscience.

## NINTH CLAIM FOR RELIEF
### (In the Alternative, Common Law of Promissory Estoppel – All Defendants)

72.     Plaintiffs re-allege and reiterate the foregoing paragraphs as if set forth fully herein

73.     The elements of a claim for promissory estoppel are: (a) the defendant made a promise to plaintiff; (b) the plaintiff reasonably and substantially relied on the promise to its detriment; (c) the plaintiff's reliance was foreseeable by the defendant; and (d) injustice can only be avoided by enforcing the defendant's promise. *Bailey v. City of Austin*, 972 S.W.3d 180, 193 (Tex.App – Austin 1998, pet. denied). Under the doctrine of promissory estoppel, a person may be bound by a promise he reasonably believed would induce action or inaction and that did induce the action or forbearance, if injustice can be avoided only by enforcement of the promise. *"Moore" Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 937 (Tex. 1972).  Promises under the theory of promissory estoppel may also be implied or implicit. *In re Texas Mortg. Services Corp.*, 761 F.2d 1068, 1076, 1985 U.S. App. LEXIS 30083, *21-22.

74.     Defendants, through their respective principals, agents, or representatives, promised Plaintiff that the investment made by Plaintiffs would be fully secured by the Property, that the EB-5 program was in full compliance with all applicable requirements of the USCIS, and that the Property would be delivered to the Plaintiff in order to induce the transfer of $555,500 from Plaintiff to AC LP.

75.     Plaintiffs reasonably relied on such promises, and such reliance was foreseeable, and indeed expected by Defendants. But for such a representation, Plaintiffs would not have invested hundreds of thousands of dollars to AC LP. Injustice can be avoided only by returning the Plaintiffs' fund for the Defendants' misrepresentation of the true nature of and correlations and affiliations among the EB-5 Program, the Property, and the Project.

### TENTH CLAIM FOR RELIEF

**(In the Alternative, Unjust Enrichment – All Defendants)**

76.     Plaintiffs re-allege and reiterate the foregoing paragraphs as if set forth fully herein.

77.     A person is unjustly enriched when he obtains a benefit from another by fraud, duress, or the taking of an undue advantage. *Ahmed v. Shah*, No. 01-13-00995-CV, 2015 Tex. App. LEXIS 390, at *15 (Tex. App.—Houston [1st Dist.] Jan. 15, 2015, no pet.) (citing *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)). A key element of unjust enrichment is that the person sought to be charged wrongly secured or passively received a benefit. *Ahmed v. Shah* (citing *Villarreal v. Grant Geophysical, Inc.*, 136 S.W.3d 265, 270 (Tex. App.—San Antonio 2004, pet. denied). It is not enough that the person sought to be charged received some incidental benefit. *Ahmed v. Shah* (citing *Bashara v. Baptist Mem'l. Hosp. Sys.*, 685 S.W.2d 307, 310 (Tex. 1985)).

78.     Defendants induced the investment of $550,000 from Plaintiffs through fraudulent misrepresentation of the Project, the EB-5 Program, and the Property, and accepted the investment transferred by Plaintiffs, but have failed to deliver the Property to Plaintiffs.

### DISGORGEMENT

79.     As described above, all Defendants benefited from their illegal and wrongful conduct and were unjustly enriched. Plaintiffs are entitled to obtain recovery from all Defendants the amount of such misappropriation of funds and other revenue and benefits realized by the Defendants under the remedy of disgorgement for at least $550,000.

### RECISSION

80.     Because of Defendants' deceptive offering of securities, fraud, fraudulent inducement, and fraudulent misrepresentation, violation of Texas Business and Commerce Code § 27.01, and Federal Securities Exchange Act et seq., Plaintiffs seek rescission of any and all

contracts entered into by and between any Defendant and Plaintiffs, including the purchase and sale agreement.

## ATTORNEYS' FEES

81.    Plaintiffs seek recovery of his attorney's fees arising out of Defendants' deceptive offering of securities, fraud, fraudulent inducement, and fraudulent misrepresentation.

## PUNITIVE DAMAGES

82.    Plaintiffs seek recovery of punitive damages arising out of Defendants' deceptive offering of securities, fraud, fraudulent inducement, and fraudulent misrepresentation in an amount exceeding $1 million.

## CLAIM FOR PRE- AND POST-JUDGMENT INTEREST

83.    Plaintiffs are entitled to recover pre- and post-judgment interest on all damages that have accrued as of the date of judgment at the highest legal rate until paid.

## JURY TRIAL DEMAND

84.    Plaintiffs request a jury trial on all claims and issues asserted herein.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs, MIAOMIAO  and YOUQING WANG, respectfully pray that, upon final hearing of this matter, the Court enter a judgment granting the following relief, jointly and severally, against each and all of the Defendants:

a.    Actual damages incurred in the amount of $555,500;

b.    Economic losses and lost business opportunity;

b.    Expectancy, reliance, and restitution damages;

b.    Exemplary damages for Defendants' fraud in an amount exceeding $1 million, or as otherwise deemed appropriate by the Court or Jury;

c.    Reasonable and necessary attorney fees as provided for by law;

18

d.      Costs of suit;

e.      Pre- and post-judgment interest; and

g.      All other relief, legal or equitable, direct or consequential, to which Plaintiff may

show itself to be justly entitled.

Signed on March 20, 2026.

Respectfully submitted,

*/s/ Renjian Zhang* .
Renjian "Ethan" Zhang
State Bar No. 24124466
ezhang@mp-lg.com
HENNA GHAFOOR
State Bar No. 24079867
hghafoor@mp-lg.com
MOSAIC Paradigm Law Group PC,
10370 Richmond Avenue 77042
Houston, Texas 77042
Telephone: (281) 805-7169
Facsimile: (281) 805-7172

**ATTORNEYS FOR PLAINTIFFS
MIAOMIAO PAN & YOUQING WANG**